IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ZURICH AMERICAN INSURANCE
COMPANY, as subrogee of
WALMART STORES EAST, LP,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　CASE No:

THE BURLINGTON INSURANCE
COMPANY,

    Defendant.

_____/

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

ZURICH AMERICAN INSURANCE COMPANY ("ZURICH") files suit against THE BURLINGTON INSURANCE COMPANY ("BURLINGTON"), and in support alleges:

**NATURE OF ACTION**

1.　　This lawsuit could have been avoided. It is indisputable that Walmart Stores East, LP ("Walmart") was always entitled to primary and non-contributory coverage as an additional insured under Burlington's insurance policy. But instead, Burlington chose to delay and shirk its obligations for over four years. Zurich was accordingly forced to drop down and defend Walmart. Burlington cannot stall any longer. Zurich is entitled to reimbursement of all the attorney's fees and costs incurred to defend Walmart, as well as interest, and attorney's fees and costs for bringing this action.

## JURISDICTION AND VENUE

2. Jurisdiction exists under 28 U.S.C § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interests, and costs.

3. Venue is proper in this district because the underlying action proceeded in this district, and a substantial part of the events giving rise to the claims occurred in this district. *See* 28 U.S.C. § 1391(b) (1) and (2).

4. All conditions precedent to filing this lawsuit have occurred, have been performed, or have been waived.

## THE PARTIES

5. There is diversity of citizenship between Zurich and Burlington.

6. Zurich is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196. Zurich is authorized to transact business and has transacted business in Florida. Accordingly, Zurich is a citizen of New York and Illinois.

7. Burlington is a North Carolina corporation engaged in the insurance business with its principal place of business in Connecticut. Accordingly, Burlington is a citizen of North Carolina and Connecticut.

# THE CONTRACTS

## *Master Subcontractor Agreement, Walmart Addendum*

8.  In 2012, North American Roofing Systems, Inc. ("NARS") and Medrano Contractors, LLC ("Medrano") entered into a Master Subcontractor Agreement ("Master Subcontractor Agreement") where Medrano agreed to perform work for NARS "in accordance with all of the Contract Documents, the terms of this Agreement, and per individual contract work orders to be issued by [NARS]." (A copy of the Master Subcontractor Agreement is attached as Exhibit "A.")

9.  Under the Master Subcontractor Agreement, Medrano was required to procure general liability and umbrella insurance and name NARS and the Owner of any project as additional insureds on Medrano's policies on a primary and non-contributory basis, as follows:

> **ARTICLE 5 – SAFETY, DUTY TO DEFEND, INDEMNITY AND INSURANCE REQUIREMENTS** …
>
> 5.3   DUTY TO INDEMNIFY …
>
> As part of the Subcontractor's Work, the Subcontractor shall procure insurance naming the Contractor, Owner, Architect, Engineer, and their agents and employees as additional insureds and the Subcontractor shall provide written notice to all insurers of the full extent of the Subcontractor's indemnity, defense, and insurance obligations. *See Exhibit A.* …
>
> 5.4   DUTY TO INSURE – As part of the Subcontractor's Work the Subcontractor [Medrano] shall obtain and maintain at its own expense the insurance set forth in Exhibit A. …

### Exhibit A ... SUBCONTRACTOR INSURANCE REQUIREMENTS ...

**General Liability and Umbrella Insurance**

Subcontractor shall obtain and carry Comprehensive/Commercial General Liability ... covering all activities by or on behalf of Subcontractor providing insurance for bodily injury liability and property damage liability...

- Subcontractor's insurance shall be primary and non-contributing with respect to any insurance or self-insurance programs carried by North American Roofing Services, Inc. or any of the Additional Insureds. ...

**Additional Insured Requirements**

North American Roofing Services, Inc., the project Owner, and its Architect or Engineer and their officer, director and employee shall be named as additional insureds on the Subcontractor's CGL and Automobile policy for any liability arising out of the performance of Subcontractor's work. Coverage under the CGL for all required additional insureds shall be provided by a policy provision or by an endorsement providing coverage. ... (*Id.*)

10. NARS entered into a Master Services Agreement with Walmart (the "Walmart Master Services Agreement"). Under the Walmart Master Services Agreement, Walmart was required to be named as an additional insured with limits of at least $2,000,000 per occurrence and $4,000,000 in the aggregate and all such insurance shall be primary, noncontributory and not excess. (A redacted copy of the Walmart Master Services Agreement is attached as Exhibit "B.")[1]

11. On 06/22/2012, Medrano and NARS executed an addendum to the Master Subcontractor Agreement ("Walmart Requirements Addendum") for work

---

[1] Exhibit B is marked confidential by the parties. An unredacted copy of Ex. B will be submitted under seal.

at Walmart stores. (A copy of the Walmart Requirements Addendum is attached as Exhibit "C.")

12. In pertinent part, the Walmart Requirements Addendum provides:

### Addendum to Master Subcontract Agreement
### Wal-Mart Subcontract Requirements

This Addendum when executed shall be incorporated and made a part of the Master Subcontract Agreement between Medrano Contractors, LLC ("Subcontractor") and North American Roofing Services, Inc. dated May 17, 2012. ...

If during the performance of any Work Orders issued under this Master Subcontract Agreement, Subcontractor is assigned to be performed on any Wal-Mart property, the Subcontractor is subject to the following terms and conditions, which are in addition to those terms and conditions identified in the Master Subcontract Agreement.

Subcontractor agrees to adhere to all terms, conditions, provisions, covenants, and requirements required of Contractor under the Master Services Agreement between Contractor and Wal-Mart. Subcontractor acknowledges a copy of the current Master Services Agreement between Contractor and Wal-Mart. ... (*Id.*)

### *Roofing Work by Medrano at Walmart*

13. Pursuant to the Master Subcontract Agreement, on 06/13/2018, Medrano accepted a Work Order from NARS for roofing work at Walmart Store #859 located at 2000 State Road 60 East, Lake Wales, Florida 33898 (the "Work Order"). (A copy of the Work Order is attached as Exhibit "D.")

14. Under the Work Order, Medrano agreed to comply with all insurance requirements and further agreed to "financially take care of all claims...." (*Id.*)

15. In pertinent part, the Work Order provides:

### NORTH AMERICAN ROOFING SERVICES, INC.
### WORK ORDER

This Work Order is to be accepted and completed as agreed upon between Contractor and Subcontractor in Master Agreement #501 wherein this work order is incorporated as a part of the Master Agreement. ...

[the Subcontractor] [is] hereby authorized to perform the following work relative to the above referenced agreement ... Prepare existing roof for installation of new roofing system ...

[*initialed*] I acknowledge that I understand the North American Roofing Safety requirements... the insurance requirements for this project...I acknowledge I have reviewed a signed Master Subcontractor Agreement with North American Roofing outlining the detailed of all above-mentioned. ...

[*initialed*] I understand that North American requires proper insurance in order to complete this project and I confirm that all insurance requirements are active and satisfied by Subcontractor. I understand should any claim arise out of this project, Subcontractor and Subcontractor insurance will be expected to financially take care of all claims. ... (*Id.*)

### **THE UNDERLYING ACTION**

16. On 08/04/2018, Lisa Asbury ("Asbury") was allegedly injured when she allegedly slipped and fell on a wet floor at Walmart Store #859 located at 2000 State Road 60 East, Lake Wales, Florida 33898.

17. On 07/31/2019, Asbury filed suit in the Circuit Court of the Tenth Judicial Circuit, Polk County, Florida, in an action bearing Case No. 2019-CA-003202 (the "Underlying Action").

18.     On 10/26/2022, Asbury filed a Fourth Amended Complaint against Walmart, NARS, Medrano, and others (the "Underlying Complaint"). (A copy of the Underlying Complaint is attached as Exhibit "E.").

19.     According to the Underlying Complaint, NARS and Medrano were contracted to perform roofing repairs and performed roofing repairs for a roof leak at the Walmart store. (Ex. E, ¶¶ 8-9.)

20.     On 08/04/2018, Asbury allegedly went to the Walmart store when she slipped on a "substance which appeared to be water leaking from the roof, which had been permitted to remain on said floor, and when she fell she sustained injuries and damages..." (*Id.*, ¶¶ 11, 15.)

21.     The Underlying Complaint includes causes of action for negligence against the defendants for errors by them or their agents.

22.     In Count I, Asbury alleges that on the date of the accident, Walmart, "by and through its employees, servants, and/or agents could reasonably anticipate that its mode of operation for ensuring that the floor of the store was not left in a slippery and dangerous condition was not reasonable." (*Id.*, ¶ 13.)

23.     In Count II, Asbury alleges NARS was "hired to repair a roof leak at the [subject] Wal-Mart store," and that NARS owed a duty "to exercise reasonable care during the roofing repair work..., to remedy the water leak and maintain the area in a safe condition while repairs were underway." (*Id.*, ¶¶ 17, 18.)

24.     In Count III, Asbury alleges Medrano was "hired to repair a roof leak at the [subject] Wal-Mart store," and that Medrano owed a duty "to exercise

reasonable care during the roofing repair work…, to remedy the water leak and maintain the area in a safe condition while repairs were underway." (*Id.*, ¶¶ 24, 25.) Asbury contends Medrano was negligent by: failing to maintain the floor space in and around the roofing repairs; failing to inspect the area around the roofing repairs; failing to warn patrons that there was an active water leak or that water was on the floor; failing to correct the dangerous condition of water leaking from the roof; failing to restrict access to the area of the roofing repairs; failing to train its employees and/or agents to stop active water leaks and input safety measures; and failing to properly supervise its employees and/or agents to ensure that all dangerous conditions could not be encountered by others. (*Id.*, ¶ 28.)

## THE BURLINGTON POLICY

25. Burlington issued a commercial general liability policy to Medrano in South Carolina, as the Named Insured, bearing Policy No. 0578CAP0002973, and effective from 08/14/2017 through 08/14/2018 (the "Burlington Policy").[2] (A copy of the Burlington Policy is attached as Exhibit "F.")

26. The Burlington Policy has an Additional Insured – Owners, Lessees, or Contractors – Scheduled Persons or Organizations Endorsement (Form CG 20 10 04 13) that provides:

**ADDITIONAL INSURED – OWNERS, LESSEES, OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION** …

**SCHEDULE**

---

[2] South Carolina law applies to the interpretation of the Burlington Policy.

| Name of Additional Insured Person(s) or Organization(s) | Location(s) of Covered Operations |
|---|---|
| Any person or organization for whom you are performing operations, but only if you have agreed, in a written contract, to add such person or organization as an additional insured on your policy for that location or part thereof, provided such written contract is fully executed prior to an "occurrence" in which coverage is sought under this policy. | Any and All Locations. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations ||

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or
**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above. ... (Ex. E at 36.)

27.     Under the Additional Insured Endorsement in the Burlington Policy, Burlington agreed to provide additional insured coverage to any person or entity agreed to by Medrano.

28.     The Burlington Policy contains an Amendment – Other Insurance (Primary and Non-Contributory Coverage) Endorsement (Form IFG-G-0094 03) that provides, in pertinent part:

Page 9 of 20

**AMENDMENT – OTHER INSURANCE
(PRIMARY AND NON-CONTRIBUTORY COVERAGE)** …

**Schedule of Additional Insured(s):**

Any person or organization named in an Additional Insured endorsement attached to this policy with whom you have agreed, in a written contract, that such person or organization should be provided primary and non-contributory coverage, but only when such written contract is fully executed prior to an "occurrence" in which coverage is sought under this policy.

**A.** Paragraph **C.** of this endorsement replaces paragraph **4. Other Insurance** of Section **IV – Commercial General Liability Conditions**, but only with respect to the insurance afforded to the additional insured(s) scheduled above. …

**C. Other Insurance**

Notwithstanding other valid and collectible insurance available to the insured for a loss we cover under the applicable Coverage Part to which this endorsement is modifying, this insurance is primary and non-contributory. … (*Id.* at 45.)

29. Under the Other Insurance Endorsement in the Burlington Policy, coverage for any additional insured under the Burlington Policy is primary and non-contributory. This tracks Medrano's obligations under the Master Subcontractor Agreement, Walmart Requirements Addendum, and Work Order.

30. Accordingly, Walmart is an additional insured under the Burlington Policy that was entitled to primary and non-contributory coverage with respect to the claims in the Underlying Complaint.

## THE ZURICH POLICY

31. Zurich issued a Commercial General Liability insurance policy to NARS as the Named Insured, bearing Policy No. GLO 1843512-00, and effective

from 06/23/2018 through 06/23/2019 (the "Zurich Policy"). (A copy of the Zurich Policy is attached as Exhibit "G.")

32.   The Zurich Policy contains an Additional Insured – Owners, Lessees, or Contractors Endorsement that provides:

> **Additional Insured – Automatic – Owners, Lessees, Or Contractors** ...
>
> **A.** Section **II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
> **2.** The acts or omissions of those acting on your behalf,
>
> in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement. ...
>
> **D.** For the purposes of the coverage provided by this endorsement:
>
> 2. The following paragraph is added to Paragraph **4.b**. of the Other Insurance Condition of Section I**V** – **Commercial General Liability Conditions**:
>
> This insurance is excess over:
>
> Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit". This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by a written contract or written

>agreement to provide coverage to the additional insured on a primary and noncontributory basis. …

(Ex. G at 66-67.)

33. If no other insurer provided a defense to an insured under the Zurich Policy, Zurich would undertake the defense of said insured and be entitled to pursue said insured's rights against other insurers. Specifically, Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, subsection **4. Other Insurance** of the Zurich Policy provides in pertinent part:

>If other valid and collectible insurance is available to the insured for a loss we coverage under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows: …
>
>**b. Excess Insurance** …
>
>**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "Suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers. …

(Ex. G at 53.)

34. Zurich has a right to subrogation whenever the Zurich Policy is activated. Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, subsection **8. Transfer Of Rights Of Recovery Against Others to Us** of the Zurich Policy provides:

>If the insured has rights to recover all of part of any payment we have made under this Coverage Part, those rights are transferred to us… At our request, the insured will… transfer those rights to us and help us enforce them.

(Ex. G at 54)

## ZURICH'S EFFORTS TO ENGAGE BURLINGTON IN WALMART'S DEFENSE

35. On 01/15/2020, Walmart requested indemnity, defense, and additional insured coverage from NARS under the Walmart Master Service Agreement. (Copies of the correspondences are attached as Composite Exhibit "H.")

36. In turn, on 02/03/2020, Zurich tendered NARS and Walmart's defense and indemnity to Medrano and its insurer, Burlington, pursuant to the terms of the Master Subcontractor Agreement, Walmart Requirements Addendum, Work Order, and Burlington Policy. Zurich reserved "the right to seek reimbursement, from [Burlington] and [Medrano], of all amounts [Zurich] advance[s] for defense and indemnity." (*Id.*, pp. 4-5)

37. Many months passed and Burlington did not bother to respond.

38. On 06/11/2020, Zurich sent Burlington a renewed tender on behalf of Walmart and NARS, warning if Zurich did not "receive [Burlington's] response within the next 10 days, [it] [would] authorize a defense firm to file the appropriate answers [on behalf of Walmart and NARS]," and that Zurich would "seek reimbursement for any defense costs paid or indemnity payments incurred after June 21, 2020." (*Id.*, p. 6)

39. On 07/29/2020, Burlington responded and acknowledged that NARS qualifies as an additional insured under the Burlington Policy on a primary and non-contributory basis. (*Id.*, p. 7)

40. But curiously, Burlington refused to acknowledge that Walmart too qualified as an additional insured under the Burlington Policy.

41. On 08/21/2020, Zurich was forced to step in and defend Walmart under the Zurich Policy with respect to the claims in the Underlying Complaint, reserving the right to seek contribution from other insurers that owe Walmart coverage. (*Id.*, pp. 8-11.)

42. On 09/29/2022, Zurich tried again to engage Burlington in Walmart's defense, once again noting that Zurich "continue[s] to reserve the right to seek reimbursement, from [Burlington] and [Medrano], of all amounts [Zurich] advance[s] for defense and indemnity." (*Id.*, pp. 12-13.)

43. On 10/21/2022, Burlington disclaimed coverage to Walmart. (*Id.*, pp. 14-16.)

44. On 03/20/2024, Zurich provided Burlington with yet another opportunity to acknowledge that it owes coverage to Walmart under the Burlington Policy on a primary and noncontributory basis with respect to the claims in the Underlying Complaint. (*Id.*, pp. 17-22.)

45. Nearly four years after Zurich first tendered the Underlying Complaint, Burlington finally accepted coverage for Walmart on 06/07/2024: "The Burlington Insurance Company (TBIC) agrees to assume the defense of Walmart in connection with the claims of Lisa Asbury…." (A copy is attached as Exhibit "I.")

46. But Burlington failed to acknowledge the balance owed to Zurich for the preceding four years it took for Burlington to accept that it owed additional insured coverage to Walmart on a primary and non-contributory basis.

47. On 09/09/2025, Zurich gave Burlington one last chance to reimburse Zurich for defense fees and costs Zurich incurred to defend Walmart, specifically, $163,010.15, plus interest.

48. Burlington must reimburse Zurich all fees and costs incurred by Zurich defending Walmart from the date of the initial tender on 02/03/2020. Indeed, Burlington could and should have accepted its obligations to its additional insured, Walmart, without being urged to do so by Zurich.

## COUNT I – DECLARATORY RELIEF

49. Zurich incorporates Paragraphs 1 through 48.

50. At the time of the accident alleged in the Underlying Complaint, Medrano entered into a Master Subcontractor Agreement with NARS, as further supplemented by the Walmart Requirements Addendum and Work Order. (Exs. A, B, D.)

51. Medrano was required to procure insurance naming NARS, Walmart, and their agents and employees as additional insureds and providing coverage on a primary and non-contributory basis. (*Id.*)

52. The Burlington Policy was in full force and effect when the underlying incident giving rise to the Underlying Complaint occurred.

53. The Burlington Policy's Additional Insured – Owners, Lessees, or Contractors – Scheduled Persons or Organizations Endorsement required Burlington to provide additional insured coverage to any person or organization "for whom [Medrano] is performing operations" because Medrano "had agreed, in a written contract, to add such person or organization as an additional insured…" (Ex. F at 34.)

54. The Burlington Policy's Amendment – Other Insurance (Primary and Non-Contributory Coverage) Endorsement provides that additional insured coverage for Walmart is primary and non-contributory. (*Id.* at 45.)

55. On the other hand, any additional insured coverage available to Walmart under the Zurich Policy is specifically "excess over" any other insurance "available to an additional insured, in which the additional insured on [the Zurich Policy] is also covered as an additional insured on another policy…" (Ex. G, at 66.)

56. Accordingly, pursuant to the terms and conditions of the Master Subcontractor Agreement, Walmart Requirements Addendum, Work Order and the terms and conditions of the Burlington Policy and the Zurich Policy, coverage for Walmart under the Burlington Policy is primary to coverage under the Zurich Policy.

57. As the primary insurer for Walmart, Burlington had a duty to defend and indemnify Walmart with respect to the claims in the Underlying Complaint since 02/03/2020.

58. Zurich timely notified Burlington of the Underlying Action and demanded that Burlington provide Walmart with a defense (and indemnification).

59. Burlington refused those requests forcing Zurich to pay sums to defend Walmart in light of Burlington's refusal to do so.

60. The defense fees and costs paid by Zurich were the sole obligation and responsibility of Burlington under the Burlington Policy.

61. Burlington breached its duty to defend Walmart.

62. Accordingly, there is an actual controversy between Zurich and Burlington regarding priority of coverage under the Burlington Policy and the Zurich Policy.

63. Zurich is also entitled to recover its reasonable attorney's fees and costs from Burlington in this action because of being forced to initiate this action to enforce rights that Burlington has no reasonable basis refusing. *Hegler v. Gulf Ins. Co.*, 243 S.E.2d 443, 446 (S.C. 1978).

## COUNT II - CONTRACTUAL SUBROGATION

64. Zurich incorporates Paragraphs 1 through 48.

65. Burlington had a primary duty to defend Walmart with respect to the claims in the Underlying Complaint.

66. Burlington breached the duty to defend Walmart.

67. After Burlington refused to protect and defend Walmart, Zurich assumed the defense of Walmart.

68. Zurich incurred defense fees and costs defending Walmart with respect to the claims in the Underlying Complaint that were the sole responsibility and obligation of Burlington.

69. Zurich was not primarily liable for Walmart's defense expenses with respect to the claims in the Underlying Complaint.

70. Zurich timely tendered the defense and indemnity of Walmart to Burlington as the primary liability insurer of Walmart under the terms of the Burlington Policy, which Burlington refused to accept.

71. Pursuant to Section IV, Conditions 4 and 8 of the Zurich Policy, Zurich is entitled to contractual subrogation against Burlington.

72. Accordingly, Zurich is entitled to reimbursement of all defense expenses incurred with respect to the claims in the Underlying Complaint through the date the Underlying Complaint was dismissed with prejudice.

73. Zurich is also entitled to recover its reasonable attorney's fees and costs from Burlington in this action because of being forced to initiate this action to enforce rights that Burlington has no reasonable basis refusing. *Hegler v. Gulf Ins. Co.*, 243 S.E.2d 443, 446 (S.C. 1978).

## **COUNT III – EQUITABLE SUBROGATION**

74. Zurich incorporates Paragraphs 1 through 48.

75. Burlington had a primary duty to defend Walmart with respect to the claims in the Underlying Complaint.

76. Burlington breached the duty to defend Walmart.

77. After Burlington refused to protect and defend Walmart, Zurich assumed the defense of Walmart.

78. Zurich incurred defense fees and costs defending Walmart with respect to the claims in the Underlying Complaint that were the sole responsibility and obligation of Burlington.

79. Zurich was not primarily liable for Walmart's defense expenses with respect to the claims in the Underlying Complaint.

80. Zurich timely tendered the defense and indemnity of Walmart to Burlington as the primary liability insurer of Walmart under the terms of the Burlington Policy, which Burlington refused to accept.

81. Zurich is entitled to subrogation against Burlington.

82. Accordingly, Zurich is entitled to reimbursement of all defense expenses incurred with respect to the claims in the Underlying Complaint through the date the Underlying Complaint was dismissed with prejudice.

83. Zurich is also entitled to recover its reasonable attorney's fees and costs from Burlington in this action because of being forced to initiate this action to enforce rights that Burlington has no reasonable basis refusing. *Hegler v. Gulf Ins. Co.*, 243 S.E.2d 443, 446 (S.C. 1978).

## **REQUESTED RELIEF**

Zurich respectfully requests that this Court:

a. Take jurisdiction and adjudicate the rights of the parties under the Burlington Policy and Zurich Policy;

    b.    Find and declare that Burlington was obligated to defend Walmart with respect to the claims in the Underlying Complaint on a primary and non-contributory basis and Burlington breached its duty;

    c.    Find and declare that Zurich is entitled to reimbursement of all payments made by Zurich in the defense of Walmart with respect to the claims in the Underlying Complaint;

    d.    Award Zurich attorney's fees and costs in the prosecution of this action, and

    e.    Award Zurich all costs incurred to prosecute this action, as well as any other relief that this Court deems equitable, just, and proper.

Respectfully submitted,

/s/SINA BAHADORAN
**SINA BAHADORAN**
Florida Bar No. 523364
Sina.Bahadoran@clydeco.us
**MICHELE A. VARGAS**
Florida Bar No. 686395
Michele.Vargas@clydeco.us

CLYDE & CO US LLP
1221 Brickell Avenue
Suite 1600
Miami, Florida 33131
T: 305.446.2646

## CERTIFICATE OF SERVICE

I certify that this pleading was filed on January 13, 2026, via the Court's CM/ECF system.

/s/MICHELE A. VARGAS
**MICHELE A. VARGAS**